1
2
3
4
5
6          IN THE UNITED STATES DISTRICT COURT
7
8          FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10   MICHELE P. SCONIERS,                          No. C 11-01798 WHA
11              Plaintiff,
12        v.                                       **ORDER PARTIALLY**
                                                   **GRANTING MOTION FOR**
13   FIRST UNUM LIFE INSURANCE                     **SUMMARY JUDGMENT BY**
     COMPANY, MORGAN STANLEY                       **MORGAN STANLEY AND**
14   DISABILITY PLAN, and MORGAN                   **THE PLAN, DENYING MOTION**
     STANLEY & CO., INC.,                          **FOR SUMMARY JUDGMENT**
15                                                 **BY UNUM, AND ALLOWING**
                Defendants.                        **LIMITED DISCOVERY**
16
     _____/
17

**United States District Court**
For the Northern District of California

18                        **INTRODUCTION**
19        In this ERISA action, all defendants move for summary judgment.  Plaintiff opposes the
20   motions and requests leave to take discovery.  For the reasons stated below, one motion for
21   summary judgment is **GRANTED IN PART AND DENIED IN PART**, the other motion for summary
22   judgment is **DENIED**, and limited discovery will be allowed.
23                         **STATEMENT**
24        Plaintiff Michele P. Sconiers was hired as a level-two banking associate by defendant
25   Morgan Stanley & Co., Inc., on July 24, 2006.  Less than a year later, on June 27, 2007, plaintiff
26   stopped working due to a variety of disabling symptoms, including pain, swelling, fevers,
27   dizziness, and forgetfulness.  Plaintiff was 33 years old at the time, and her base salary
28

United States District Court
For the Northern District of California

1    was $100,000.  Before joining Morgan Stanley, plaintiff had worked as an attorney at the

2    Skadden, Arps law firm (Sconiers Decl. ¶¶ 2–3, 6; Braun Decl. ¶ 3; AR 114, 140–41).[1]

3         Plaintiff applied for disability benefits based on her participation in defendant Morgan

4    Stanley Disability Plan, alleging a disability onset date of June 22, 2007.  Defendant Morgan

5    Stanley was the plan administrator of the Plan, and defendant First Unum Life Insurance

6    Company was the claims fiduciary for long-term disability benefits under the Plan.  Unum

7    approved plaintiff's claim and begin paying her long-term disability benefits

8    (AR 114–19, 131–42).  According to plaintiff, however, the payments were too low.  Plaintiff

9    argues that her benefits were calculated under the wrong policy and that the terms of the disputed

10   policy were not even applied correctly.  Specifically, plaintiff argues that her claims were subject

11   to the 2006 policy rather than the 2007 policy, and that the calculation of her benefits should have

12   taken into account her expected bonuses and income from her previous employment as an

13   attorney at Skadden.

14        Plaintiff sought medical treatment from numerous specialists, but her condition did not

15   improve and no conclusive diagnosis was made that could explain all of her symptoms.  In

16   March 2010, Unum terminated plaintiff's benefits pursuant to a two-year limitation on benefits

17   for disability due to mental illness (AR 2832–41).  The termination was based on reports by

18   Unum's retained physicians, who had reviewed plaintiff's medical files and concluded that

19   mental illness was the most plausible explanation for her combination of persistent symptoms.

20   Specifically, Unum's physicians opined that plaintiff suffered from somatoform disorder, a

21   condition in which the patient believes herself to be suffering physical ailments that cannot

22   otherwise be explained (*e.g.*, AR 2786).  Plaintiff, however, did not claim to suffer from any

23   mental illness and in fact continues to deny any mental illness.  Plaintiff appealed the termination

24   of her benefits, and in November 2010 Unum upheld its denial on appeal (AR 3808–14).

25

26

27       [1] Plaintiff's declaration states that she was hired by Morgan Stanley on July 24, *2007*, but all other
documentation and briefing lists her hire date as July 24, *2006*.  This order assumes the 2007 hire date in

28   plaintiff's declaration was an error; it would have been impossible for plaintiff to stop working for Morgan
Stanley before she was hired (Sconiers Decl. ¶ 2).

Five months later, plaintiff filed the instant action.  Her first amended complaint, which is currently operative, asserted four claims for relief:  (1) recovery of employee benefits under 29 U.S.C. 1132(a)(1)(B), against all three defendants; (2) equitable relief under 29 U.S.C. 1132(a)(3), against Morgan Stanley and Unum; (3) declaratory and injunctive relief under California Insurance Code § 10144, against Unum; and (4) civil penalties for failure to produce documents under 29 U.S.C. 1132(c)(1) and 29 C.F.R. 2575.502 c-1, against Morgan Stanley.  A motion by Unum to dismiss the second and third claims was denied, but portions of the complaint were stricken (Dkt. No. 68).

All three defendants now move for summary judgment on all claims against them. Morgan Stanley and the Plan filed a joint motion, and Unum filed a separate motion.  Plaintiff opposes both motions and requests leave to take discovery.  This order follows full briefing and a hearing.

**ANALYSIS**

Each motion will be addressed in turn.

**1.    MOTION FOR SUMMARY JUDGMENT BY MORGAN STANLEY AND THE PLAN.**

The operative complaint asserted one ERISA claim against the Plan and three ERISA claims against Morgan Stanley.  Each claim will be addressed in turn.

**A.    Claim for Recovery of Benefits Under 29 U.S.C. 1132(a)(1)(B).**

Section 1132(a)(1)(B) allows a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" by way of a civil action.  The factual theories underlying plaintiff's Section 1132(a)(1)(B) claims against Morgan Stanley and the Plan are that the 2007 policy was not properly adopted, that notice of the 2007 policy was not properly provided, and that the policy terms were not properly applied to the calculation of her benefit.  Each factual theory will be addressed in turn.

***(1)    Adoption of the 2007 Policy.***

Every ERISA plan must "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan."  29 U.S.C. 1102(b)(3).  The parties agree that

United States District Court

For the Northern District of California

1  the relevant procedure was set forth as follows in the 2006 summary plan description

2  (Braun Exh. M at MS00000262) (emphasis added):

> Although Morgan Stanley and its affiliates expect to continue the
> Disability Plan indefinitely, Morgan Stanley & Co. Incorporated,
> *by action of its Board of Directors* (or its delegate, the Morgan
> Stanley Director of Global Human Resources), necessarily
> reserves the right to amend, modify or discontinue the Plan or any
> benefits under the Plan at any time for any reason or from time
> to time.

7  In 1989, the board of directors empowered an executive committee to exercise "all the powers of

8  the Board of Directors in the management of the business and affairs of the Corporation to the

9  extent provided by Section 141(c) of the General Corporation Law of the State of Delaware as it

10 exists now or as it may be hereafter amended" (Tyler Exh. D at MS000811). Nothing in

11 Section 141(c) forbade an executive committee of a corporation's board of directors (as opposed

12 to the board itself) from amending the corporation's ERISA plan.

13     In November 2006, the executive committee amended the Plan by adopting the 2007

14 long-term disability benefits policy to replace the 2006 policy (Tyler Exh. H at MS00000033,

15 MS00000050). Because the executive committee had been empowered to act with "all the

16 powers of the Board of Directors" and the board of directors had authority amend the Plan, this

17 amendment was valid.

18     Plaintiff's arguments to the contrary are unavailing. *First*, plaintiff's evidentiary

19 objections to the Tyler declaration are overruled. Defendants' reliance on Mr. Tyler to

20 authenticate corporate records was proper. *Second*, plaintiff's assertion that "[t]here is no actual

21 designation of the authority to the Executive Committee named in Exhibit H to amend plan

22 documents or to act on behalf of the Board" is incorrect (Opp. 16). Exhibit D to the Tyler

23 declaration, quoted above, conferred the requisite authority.

24     *Third*, plaintiff's contention that the executive committee's authority must be drawn from

25 corporate bylaws misreads Section 141(c), which lists corporate bylaws as only one possible

26 source of such authority (emphasis added): "Any such committee, to the extent provided in the

27 resolution of the board of directors, *or* in the bylaws of the corporation, shall have and may

28 exercise all the powers and authority of the board of directors in the management of the business

United States District Court
For the Northern District of California

and affairs of the corporation."  Thus, the power of a committee to act with authority of the board of directors may be conferred *either* by resolution of the board *or* in the bylaws.  Here, it was conferred by resolution of the board.

*Fourth*, plaintiff asserts that "there is no document appointing successors to [the original members of the executive committee], much less appointing the individuals who allegedly approved the 2007 plan amendment" (Opp. 17).  Not so.  Exhibit E to the Tyler declaration documents the appointment of the individuals who executed the plan amendment on behalf of the executive committee.  They were appointed in November 2005, a year before they adopted the 2007 long-term disability policy on behalf of the board (Tyler Exh. E at MS00000202). Moreover, plaintiff cites no authority requiring proof of the full chain of succession of executive-committee membership.  Plaintiff notes that the composition and size of the committee changed over time, but plaintiff does not explain why those changes supposedly render the November 2006 committee action invalid.

The many out-of-circuit decisions plaintiff cites are not binding and therefore need not be addressed.  Moreover, those decisions are inapposite because here the plan amendment was made in writing by a committee that the board of directors authorized to act on its behalf.  Plaintiff cites controlling authority for the proposition that failure to comply with specified amendment procedures nullifies purported amendments.  Plaintiff, however, has failed to identify any respect in which adoption of the 2007 long-term disability policy failed to comply with the Plan's amendment procedures.  This order finds that adoption of the 2007 policy by the executive committee was valid.

### (2)  *Notice of the 2007 Policy.*

"[T]he plan administrator shall use measures reasonably calculated to ensure actual receipt of the material by plan participants."  29 C.F.R. 2520.104b-1(b)(1).  As stated, Morgan Stanley served as the plan administrator for the Plan.  During the open-enrollment period in October 2006, Morgan Stanley sent a packet of documents by first-class mail to plaintiff's home address.  The packet included a 2007 benefits-enrollment guide and a two-page guide to "What's New in 2007" (Braun Decl. ¶ 5).  The latter document highlighted several specific policy changes

5

United States District Court

For the Northern District of California

1   including the one plaintiff now challenges — a new method for calculating Health and Welfare

2   Eligible Earnings for purposes of determining long-term disability benefits.  It advised

3   participants to "take the time to review and understand these changes" and it explained how to

4   access more information, including the 2007 summary plan description, from the internet or by

5   calling a representative (Braun Exh. B at MS00000429–30).[2]

6        Plaintiff argues that this form of notice was inadequate.  She challenges both the

7   dissemination measures and the content of the documents themselves.  These issues will not be

8   decided at this stage on a cold administrative record.  Plaintiff will be allowed to more fully

9   develop the factual record before the adequacy of notice will be adjudged.

10              *(3)     Application of the 2007 Policy.*

11       Plaintiff argues that the amount and duration of her disability benefits was not properly

12  calculated, because the terms of the 2007 policy were not properly interpreted and applied to her

13  disability claim.  As the claims fiduciary, Unum — and *not* Morgan Stanley or the Plan —

14  computed plaintiff's benefits.  Morgan Stanley provided plaintiff's salary and employment

15  information to Unum, but Unum had full discretionary authority to interpret and apply the plan

16  terms (Braun Exh. D at MS00000068).  Nonetheless, Morgan Stanley and the Plan do not dispute

17  that they may be held liable under ERISA law for Unum's alleged miscalculation of

18  plaintiff's benefits.[3]

19       Unum's interpretation and application of the relevant plan terms cannot be reviewed at

20  this time.  As explained below, discovery into Unum's conflict of interest and possible bias will

21  be allowed before the proper degree of deference to Unum's decisions is chosen.  Accordingly,

22  the motion for summary judgment by Morgan Stanley and the Plan cannot be granted as to the

23  issue of plaintiff's benefit calculation at this time.

24                  *          *          *

25  _____

26       [2] Plaintiff's evidentiary objections to the Braun declaration and exhibit B thereto are overruled.
    Exhibit B was properly authenticated with adequate specificity, and the "What's New in 2007" document was

27  not hearsay because it was not presented for the truth of its contents.  Rather, it was relied upon to show what
    information was communicated to plaintiff.

28       [3] Plaintiff's evidentiary objections to Braun Exhibit D are overruled for the same reasons as her
    evidentiary objections to Braun Exhibit B and under the business-records exception to the hearsay rule.

As to plaintiff's claim for recovery of benefits under 29 U.S.C. 1132(a)(1)(B), the motion for summary judgment by Morgan Stanley and the Plan is **GRANTED IN PART AND DENIED IN PART**.  This order finds that the adoption of the 2007 long-term disability policy by the executive committee was valid.  As to that factual theory, the defense motion is **GRANTED**.  As to the theories that notice of the 2007 policy was inadequate and that Unum improperly interpreted and applied the policy terms when calculating plaintiff's benefit payments, the motion is **DENIED** without prejudice to renewal after completion of the discovery allowed by this order below.

### B.   Claim for Equitable Relief Under Section 1132(a)(3).

Plaintiff asserts a claim for equitable relief under 29 U.S.C. 1132(a)(3) against Morgan Stanley.  Section 1132(a)(3) is a catch-all, "safety net" provision that may be relied upon if adequate relief is not provided elsewhere by the statute; if an adequate remedy *is* provided elsewhere, then a claim under Section 1132(a)(3) is *not* appropriate.  *Varity Corp. v. Howe*, 516 U.S. 489, 512–15 (1996).  Here, Morgan Stanley has not shown that resort to the safety net of Section 1132(a)(3) is entirely out of the question.

In the operative complaint, plaintiff "asserts that a claim for benefits due under the Plan does not provide her with an adequate remedy at law in light of [defendants'] continuing course of conduct in violating the terms of the Plan and applicable law" (First Amd. Compl. ¶ 32).  Plaintiff seeks the following relief against Morgan Stanley under Section 1132(a)(3):  (1) an equitable surcharge to pay plaintiff the amount of benefits she believes she is owed; (2) an equitable reformation of the applicable policy imposing the benefit terms as plaintiff understood them; (3) equitable estoppel preventing defendants from relying upon the 2007 policy to calculate her benefits; and (4) an injunction requiring payment of all past and future benefits plaintiff believes she is owed (*id.* at ¶¶ 36, 38).

Although couched in terms of equitable relief, many of these requests seek money plaintiff believes she is owed as a remedy for Morgan Stanley's alleged breach of its fiduciary duty in administering the Plan and communicating with plaintiff about it.  Plaintiff's claim under Section 1132(a)(1)(B) enables her "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under

the terms of the plan." This section "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims." *Varity*, 516 U.S. at 512. Plaintiff may recover any past or future benefits she is owed under the Plan via Section 1132(a)(1)(B), so resort to Section 1132(a)(3) is unnecessary for recovery of benefits.

But there is more. Plaintiff argues that if her interpretation of the applicable policy is wrong — meaning she is *not* owed any benefits recoverable under Section 1132(a)(1)(B) — then the applicable policy should be reformed to match her understanding, and she should recover payment under the reformed terms. According to plaintiff, such a remedy is authorized by Section 1132(a)(3) on account of Morgan Stanley's alleged "failure to properly notify" her of the 2007 policy amendments (Opp. 12).

This order already found that initial notice of the 2007 amendments was adequate. When plaintiff became disabled, however, *defendants affirmatively represented to her that the 2006 policy, and not the 2007 policy, governed her disability claim*. When she initially requested a copy of the policy governing her disability claim, she was sent the 2006 policy rather than the 2007 policy. Defendant Unum "repeatedly represented" that the 2006 policy governed her claim, and Morgan Stanley was nonresponsive to plaintiff's repeated inquiries as to which policy applied (Sconiers Decl. ¶¶ 14–17, Exh. 6). Sometimes later, defendants reversed course. They now argue that the 2007 policy controls.

This history is troubling. Without speculating about the explanation for defendants' inconsistencies, this order finds that these facts have the potential to support a claim for equitable relief under Section 1132(a)(3), such as contract reformation. Morgan Stanley has not categorically disproved this potential.

*First*, Morgan Stanley argues that it provided adequate notice of the changes in the 2007 policy. This does not change the fact that Morgan Stanley's later communications with plaintiff regarding which policy *applied* to her claim were inconsistent and misleading.

*Second*, Morgan Stanley argues that "under clear Ninth Circuit authority, beneficiaries may bring fiduciary actions under § 1132(a)(3) only 'for the benefit of the plan and not their individual benefit'" (Br. 15). Not so. The decisions Morgan Stanley cites for this proposition

United States District Court

For the Northern District of California

1    contain no such clear statement.  The quotation in the brief referred to actions under

2    Section 1109, not Section 1132.  *See Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1445

3    (9th Cir. 1995).  Moreover, the Supreme Court recently blessed the equitable remedy of contract

4    reformation for mmistreated ERISA beneficiaries under Section 1132(a)(3), albeit in dicta.  *See*

5    *Cigna Corp. v. Amara*, 131 S.Ct. 1866, 1870–72 (2011).

6         *Third*, Morgan Stanley argues that "claimants can generally bring claims *either* for plan

7    benefits under section 1132(a)(1)(B) *or* for equitable relief under section 1132(a)(3), but not

8    both" (Br. 16).  The case law cited for this generalization simply explains the rule that

9    Section 1132(a)(3) cannot be used to obtain relief provided elsewhere in the statute.  Here,

10   plaintiff seeks equitable relief under Section 1132(a)(3) based on a different theory than her claim

11   under Section 1132(a)(1)(B) — namely, that defendants affirmatively misled her as to which

12   policy governed her disability claim.  This theory is not foreclosed by plaintiff's pursuit of other

13   theories under other statutory provisions.

14        This order finds that discovery into plaintiff's communications with defendants regarding

15   her disability claim is warranted.  As to plaintiff's claim for equitable relief

16   under 29 U.S.C. 1132(a)(3), the motion for summary judgment by Morgan Stanley is **DENIED**

17   without prejudice to renewal after completion of the discovery allowed by this order below.  Any

18   relief under Section 1132(a)(3) will be limited to theories not viable under other provisions of the

19   statute and in particular will not be available for benefits owed under the terms of the applicable

20   policy as written.

21              **C.    Claim for Penalties for Failure to Produce Documents.**

22        If an ERISA plan administrator fails to provide certain information within thirty days of a

23   plan participant's request, district courts have discretion to impose a civil fine or order other

24   relief.  Specifically, a plan administrator

25

26

27

28

United States District Court

For the Northern District of California

> who fails or refuses to comply with a request for any information
> which such administrator is required by this subchapter to furnish
> to a participant or beneficiary (unless such failure or refusal results
> from matters reasonably beyond the control of the administrator)
> by mailing the material requested to the last known address of the
> requesting participant or beneficiary within 30 days after such
> request may in the court's discretion be personally liable to such
> participant or beneficiary in the amount of up to $100 a day from
> the date of such failure or refusal, and the court may in its
> discretion order such other relief as it deems proper.

29 U.S.C. 1132(c)(1)(B).  Plaintiff states in her declaration that from 2007 through 2010 she "made repeated requests by phone and in writing to Morgan Stanley for a copy of the 2007 Policy and an explanation of how [her] monthly benefit was calculated, only to receive no meaningful response from Morgan Stanley."  Specifically, plaintiff states she had difficulty obtaining a copy of the 2007 long-term-disability policy and information concerning the calculation of her Health and Welfare Eligible Earnings — a figure used to calculate her long-term disability benefits (Sconiers Decl. ¶ 11).  Plaintiff also complains that Morgan Stanley took shifting positions on which policy (2006 versus 2007) applied to her disability claim and on how her benefits were calculated (Opp. 21–22).  Having considered the record of plaintiff's communications with Morgan Stanley, this order finds that civil penalties under Section 1132(c)(1)(B) may indeed be warranted.

Plaintiff's declaration refers to two email strings in which she sought assistance from Morgan Stanley — one from November 2007, and one spanning the period from January 2010 to April 2010.  In the November 2007 emails, plaintiff asserted that "there may have been an error in the calculation of my HWEE" and requested to discuss the matter with a representative.  Plaintiff did not request any information or documents at that time (Sconiers Exh. 5).

In the second string of emails, plaintiff did request information.  On January 15, 2010, plaintiff asked a Morgan Stanley representative to " please provide my HWEE for 2006 and 2007" and "a copy of the Master Plan which applies to me."  Morgan Stanley representatives followed up by phone and email and continued to work with plaintiff over the next few months. They apologized for delays and explained that it took "longer than expected for our Benefits Center to retrieve your records which have been archived since a while now" (Sconiers Exh. 6).

Plaintiff received a copy of the 2006 long-term-disability policy from defendant Unum on January 28, 2010, about two weeks after she asked Morgan Stanley for a copy of the applicable policy (First Amd. Compl. ¶ 13). On February 9, 2010, plaintiff emailed Morgan Stanley acknowledging receipt of the 2006 policy, expressing belief that the 2007 policy "may apply" to her disability claim, and requesting a copy of the 2007 policy (Sconiers Exh. 6). Morgan Stanley provided a copy of the 2007 long-term-disability policy and summary plan description on April 15, over two months after plaintiff's request (Braun Decl. ¶ 9).

As to the calculation of plaintiff's HWEE, Morgan Stanley provided plaintiff a computer screen shot reflecting the components of her pay used to calculate her HWEE on April 29, 2010, over three months after plaintiff's request for "my HWEE" (Braun Decl. ¶ 9). Plaintiff made several additional requests for clarification or further information concerning the calculation of her HWEE, and Morgan Stanley responded promptly to those requests (Braun Decl. ¶¶ 9–10; Higgins Decl. ¶¶ 2–4, 7–8).[4]

Thus, plaintiff has shown that Morgan Stanley took over two months to send her a copy of the 2007 policy and over three months to send her information relevant to the calculation of her HWEE. These delays far exceeded the thirty-day statutory deadline. Additionally, defendants' inconsistent communications regarding which policy (2006 versus 2007) governed plaintiff's disability claim, which were described above, suggest the possibility of bad-faith stonewalling. Discovery into these matters will be allowed.

Morgan Stanley's arguments on this point are unpersuasive. Contrary to Morgan Stanley, there *is* evidence of delay and reason to suspect bad faith. The relevant evidence was reviewed above, and the operative complaint supports this evidence. Although the relevant claim for relief explicitly referenced discovery delay "since April 13, 2010," it also "reallege[d] and incorporate[d] paragraphs 1 through 42," which included allegations of discovery delay in the 2009–2010 time frame (First Amd. Compl. ¶ 13). This is not a new theory.

---

[4] Plaintiff's evidentiary objections to the Higgins declaration are overruled. Ms. Higgins explicitly states that she has personal knowledge of the facts set forth in her declaration.

Morgan Stanley also argues that the HWEE documentation is not subject to Section 1132(c)(1), because it is not "information which such administrator is required by this subchapter to furnish." Our court of appeals, however, has interpreted that phrase with some flexibility. For example, it recognized a claim for relief under Section 1132(c)(1) for delayed production of claim activity records, because the records were "relevant to the claimant's claim for benefits" and the ERISA *regulations* require provision of such information. *Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 945 (9th Cir. 2008). So too here. Morgan Stanley was obligated to provide plaintiff the requested HWEE information in a timely manner.

Morgan Stanley emphasizes the discretionary nature of civil penalties available under Section 1132(c)(1) and urges against exercising the discretion to impose penalties. This decision will be made after discovery, with the benefit of a more complete evidentiary record. As to plaintiff's claim for civil penalties for failure to produce documents under 29 U.S.C. 1132(c)(1)(B), the motion for summary judgment by Morgan Stanley is **DENIED** without prejudice to renewal after completion of the discovery allowed by this order below.

*          *          *

The motion for summary judgment by Morgan Stanley and the Plan is **GRANTED IN PART AND DENIED IN PART**. This order finds that the adoption of the 2007 long-term-disability policy by the executive committee was valid. As to that theory of recovery under 29 U.S.C. 1132(a)(1)(B), the motion is **GRANTED**. In all other respects, the motion is **DENIED** without prejudice to renewal after completion of the discovery allowed by this order.

Recovery of benefits under 29 U.S.C. 1132(a)(1)(B) is still possible based on the theory that notice of the 2007 policy was inadequate or the theory that Unum improperly interpreted and applied the applicable long-term-disability policy. Equitable relief under 29 U.S.C. 1132(a)(3) is still possible, but only for theories not viable under other provisions of the statute and in particular not for benefits owed under the terms of the applicable policy as written. Discretionary civil penalties under 29 U.S.C. 1132(c)(1)(B) are still possible as well.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

2.     **MOTION FOR SUMMARY JUDGMENT BY UNUM.**

The operative complaint asserted three claims for relief against Unum:  two ERISA claims and one claim nominally under California state law.  The first claim against Unum was for recovery of benefits under 29 U.S.C. 1132(a)(1)(B); this claim also was asserted against Morgan Stanley and the Plan.

The second claim against Unum was for equitable relief under 29 U.S.C. 1132(a)(3); this claim also was asserted against Morgan Stanley.  The order on Unum's motion to dismiss ruled that one aspect of the equitable relief sought against Unum via this claim — removal of Unum as the claims fiduciary — was not available under Section 1132(a)(3) but might be sought under Section 1132(a)(2) instead (Dkt. No. 68 at 6).

The third claim against Unum was for declaratory and injunctive relief based on a finding that Unum had violated California Insurance Code § 10144.  Plaintiff did not seek substantive relief under Section 10144 but rather cited it as a "relevant rule of decision" whose violation would demonstrate Unum's abuse of discretion under ERISA (*see* Dkt. No. 68 at 11).  Accordingly, the parties' arguments concerning preemption of Section 10144 by ERISA need not be addressed here.  Unum also argues that California law is irrelevant because the Plan's documentation states that it is governed by New York law (*see* AR 3855).  Unum, however, does not explain how this choice-of-law provision supposedly eliminates Section 10144 as an applicable rule of decision under ERISA.  Specifically, Unum has no answer for plaintiff's reference to our court of appeal's observation that "California law *requires* courts to deviate from the explicit policy definition of 'total disability' in the occupational policy context." *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1006 (9th Cir. 2004).  The decision Unum cites to support its reliance on the choice-of-law provision addresses only statutes of limitations. *See Wang Labs. v. Kagan*, 990 F.2d 1126, 1128–29 (9th Cir. 1993).

All three of plaintiff's claims for relief against Unum are based on the allegedly wrongful termination of plaintiff's long-term disability benefits and the allegedly inaccurate calculation of her benefit payments.  As a threshold matter, the applicable standard of review must be determined before Unum's claims-administration decisions can be judged.

13

District court review of ERISA disability-benefit denials is *de novo* unless the plan gives the administrator discretionary authority to determine eligibility for benefits. If the plan grants discretionary authority, then the administrator's decision is reviewed with more deference. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008). Here, the 2007 policy amendment stated: "In making any benefits determination under this policy, the Company shall have the discretionary authority both to determine an employee's eligibility for benefits and to construe the terms of this policy" (AR 3862). The 2007 summary plan description stated (Braun Exh. D at MS00000068):

> In carrying out their respective responsibilities under the Plan, the Plan Administrator and other Plan fiduciaries shall have the exclusive right and discretionary authority to make any findings necessary or appropriate for any purpose under the Plan, including to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary.

Morgan Stanley delegated claims administration under the Plan to Unum, the claims fiduciary and insurer of the Plan (Braun Decl. ¶ 11). Thus, the Plan's documentation granted Unum discretionary authority to determine eligibility for benefits and to interpret the applicable policy terms. Plaintiff does not dispute that Unum had discretionary authority. Accordingly, the abuse-of-discretion standard applies to review of Unum's decisions concerning plaintiff's disability claim.

The fact that Unum acted both as the claims administrator and as the payor under the Plan created a structural conflict of interest, which must be factored into the abuse-of-discretion analysis. The Supreme Court's *Glenn* decision held that when the same entity determines eligibility for benefits and pays those benefits out of its own pocket, a conflict of interest is created, and "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits." *Glenn*, 554 U.S. at 108. Unum does not dispute that this structural conflict of interest was present.

The Supreme Court provided the following guidance for how a reviewing court should factor the structural conflict of interest into its analysis:

14

United States District Court

For the Northern District of California

> We turn to the question of how the conflict we have just identified should be taken into account on judicial review of a discretionary benefit determination. In doing so, we elucidate what this Court set forth in *Firestone*, namely, that a conflict should be weighed as a factor in determining whether there is an abuse of discretion. We do not believe that *Firestone*'s statement implies a change in the *standard* of review, say, from deferential to *de novo* review. . . . Neither do we believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural evidentiary rules, focused narrowly upon the evaluator/payor conflict. . . . We believe that *Firestone* means what the word 'factor' implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one.

*Id.* at 115–17 (internal quotations and citations omitted). Because Unum had a structural conflict of interest, Unum's decisions should be reviewed with heightened skepticism.

Addressing how little or how much to temper the abuse-of-discretion standard with skepticism, the Ninth Circuit has stated:

> The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial; fails adequately to investigate a claim or ask the plaintiff for necessary evidence; fails to credit a claimant's reliable evidence; or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

*Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968–69 (9th Cir. 2006) (internal citations omitted). Although the Ninth Circuit's *Abatie* decision pre-dated *Glenn*, this aspect of earlier Ninth Circuit law remains in force. *See Nolan v. Heald Coll.*, 551 F.3d 1148, 1153–54 (9th Cir. 2009). In some instances, it is necessary to evaluate evidence outside the administrative record to determine the conflict's "nature, extent, and effect, on the decision-making process." *Id.* at 1153.

Plaintiff points to a variety of evidence outside the administrative record to support her arguments that Unum's structural conflict of interest was exacerbated by bias and that Unum's decisions should be reviewed with heightened skepticism. This evidence is disconcerting. Lawsuits and large-scale investigations have revealed that for at least a decade starting in the mid-1990s Unum systematically engaged in bad-faith practices designed to wrongfully limit and

15

deny benefits to ERISA plan participants (*see* Grey Exh. 2 at 1315, 1317–21).  Federal judges have repeatedly commented on Unum's "disturbing pattern of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics."  *See Radford Trust v. First Unum Life Ins. Co. of Am.*, 321 F. Supp. 2d 226, 247–48 & n.20 (D. Mass. 2004) (collecting citations).[5]

One such tactic was the use of "'round table' meetings with lawyers, doctors, and claims handlers designed to 'tri-age' the most expensive claims," *i.e.*, to find ways to clear expensive benefits claims from Unum's books before the end of the fiscal year.  *Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1012 (9th Cir. 2007).  Here, plaintiff was 33 years old at the time she stopped working, and her base annual salary was $100,000 (AR 140; Braun Decl. ¶ 3).  Her claim was an expensive one.  It was reviewed through the round-table process (*e.g.*, AR 2609).[6]

A second such tactic involved abuse of mental-illness exceptions in order to wrongfully terminate benefits claims.  For example, Unum's settlement of an investigation by the California Department of Insurance curtailed Unum's practice of construing 24-month mental-illness coverage as running concurrently with other coverage (AR 3212).  Unum has previously terminated disability benefits pursuant to a mental-illness exception based on Unum's own unsupported conclusion that the claimant suffered from somatoform disorder.  *See Fitts v. Unum Life Ins. Co. of Am.*, No. 98-00617, 2007 WL 1334974, at *16–17 (D.D.C. May 7, 2007).  Here, too, plaintiff's disability benefits (which were claimed for disabling physical symptoms) were terminated under a mental-illness exception based on an opinion by Unum's physicians that plaintiff suffered from somatoform disorder.  Plaintiff notes that Dr. William Black, the Unum staff physician who referred her for neuropsychological evaluation, has been legally challenged in previous opinions of malingering by claimants (*see* AR 1680–82; Opp. 6).

---

[5] Unum's evidentiary objections to Exhibit 2 to the Grey declaration are overruled.  This law-review article provides relevant background information on the Unum scandals of the late 1990s and early 2000s.

[6] Plaintiff states that the Unum staff assigned to her claim conducted "no fewer than five 'roundtables' during her claim."  She lists the time frames and attendees for different round-table meetings, but not all of these descriptions are supported by citations to the record (Opp. 5, 8).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Plaintiff has produced enough evidence to show that Unum's calculation of her disability

2   benefits and termination of her claim under the mental-illness exception may well have been

3   tainted by more than the structural conflict of interest.  Unum insists that it has reformed its

4   practices, but Unum's history of bad-faith dealing remains troubling in light of the present facts.

5   In particular, the termination of a large claim under the mental-illness exception despite the

6   claimant's denial of mental illness, following round-table review and a somatoform disorder

7   diagnosis by staff physicians, raises suspicion of bias.  Discovery will be allowed into the

8   possibility that Unum evaluated plaintiff's claim in bad faith.  Only after additional facts are

9   brought to light will the standard of review for judging Unum's decisions be determined.  Unum's

10   motion for summary judgment is **DENIED** without prejudice to renewal after completion of the

11   discovery allowed by this order.

12          **3.      PLAINTIFF'S REQUEST FOR DISCOVERY.**

13    Pursuant to FRCP 56(d), plaintiff requests extensive discovery (Dkt. No. 63 at ¶¶ 22–25;

14   Dkt. No. 65 at ¶¶ 4–6).  Plaintiff's discovery request is overbroad, particularly in light of the

15   narrowing of issues by this order.  Plaintiff, however, has demonstrated that limited discovery

16   regarding certain subjects is warranted.

17    The following discovery will be allowed.  Plaintiff may serve twenty narrow

18   interrogatories without sub-parts and thirty document requests that are narrowly drawn.  Plaintiff

19   also may take ten one-day depositions.  This discovery must be directed to the following issues:

20          1.      Morgan Stanley's development and adoption of methods and

21       documents for providing notice of the 2007 policy;

22          2.      Plaintiff's communications with defendants concerning which

23       policy (2006 versus 2007) governed her long-term-disability claim;

24          3.      Morgan Stanley's delay in providing plaintiff with a copy of

25       the 2007 policy and with information explaining the calculation of her Health and

26       Welfare Eligible Earnings; and

27          4.      Unum's structural conflict of interest and possible bias

28       (not, however, limited to plaintiff's specific case).

1   The discovery must be focused on these issues and may not be used to supplement the record with

2   additional medical documentation supporting plaintiff's disability claim.

3         This limited discovery must be completed by **MAY 31, 2012**.  A case management

4   conference will be held at **11:00 A.M. ON JUNE 7, 2012**, in order to set an evidentiary hearing on

5   these issues or determine how else to proceed.

6                                              **CONCLUSION**

7         The motion for summary judgment by Morgan Stanley and the Plan is **GRANTED IN PART**

8   **AND DENIED IN PART**.  This order finds that the adoption of the 2007 long-term-disability policy

9   by the executive committee was valid.  As to that theory of recovery

10   under 29 U.S.C. 1132(a)(1)(B), the motion is **GRANTED**.  In all other respects, the motion is

11   **DENIED** without prejudice to renewal after completion of the discovery allowed by this order.

12   Recovery of benefits under 29 U.S.C. 1132(a)(1)(B) is still possible based on the theory that

13   notice of the 2007 policy was inadequate or the theory that Unum improperly interpreted and

14   applied the applicable long-term-disability policy.  Equitable relief under 29 U.S.C. 1132(a)(3) is

15   still possible, but only for theories not viable under other provisions of the statute and in

16   particular not for benefits owed under the terms of the applicable policy as written.  Discretionary

17   civil penalties under 29 U.S.C. 1132(c)(1)(B) are still possible as well.

18         The motion for summary judgment by Unum is **DENIED** without prejudice to renewal after

19   completion of the discovery allowed by this order.

20         Plaintiff's request for leave to take discovery is **GRANTED IN PART AND DENIED IN PART**.

21   The limited discovery described above will be allowed.  As to any discovery exceeding that

22   scope, plaintiff's request is **DENIED**.

23         To the extent not specifically addressed herein, all evidentiary objections, motions to

24   strike, and requests for judicial notice are **DENIED AS MOOT**.

25

26

27

28

**United States District Court**
For the Northern District of California

18

1        The discovery allowed herein must be completed by **MAY 31, 2012**.  A case management

2   conference will be held at **11:00 A.M. ON JUNE 7, 2012**, in order to set an evidentiary hearing on

3   these issues or determine how else to proceed.

4

5        **IT IS SO ORDERED.**

6

7   Dated:  November 18, 2011.



8        WILLIAM ALSUP
         UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California